Case 7:18-cv-00048   Document 101   Filed 01/22/26 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
January 22, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 7:18-CV-048 |
| § | |
| CARLOS NOE GALLEGOS § | |
| § | |
| Defendant, § | |

## ORDER AND OPINION

In this lawsuit, Plaintiff United States of America seeks to revoke Defendant Carlos Noe Gallegos's United States citizenship. Gallegos became a naturalized United States citizen in March 2010. Seven years later, he pled guilty in a Texas state court to aggravated sexual assault of a child, a crime he committed in March 2007.

Based on Gallegos's criminal conduct, and the information he provided to officials during his naturalization process, the Government alleges that Gallegos unlawfully obtained his United States citizenship. More specifically, in Counts I and II, the United States alleges that Gallegos illegally procured his citizenship because when he applied for naturalization, he did not meet the statutory requirement for good moral character.

The Government moves for judgment on the pleadings. (Motion, Doc. 73) Based on the record and the applicable law, the Court concludes that the Government is entitled to judgment as to Counts I and II, and that Gallegos's United States citizenship should be revoked.

**I.    Governing Standard**

The Government moves under Federal Rule of Civil Procedure 12(c), which is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990); *see also United*

*States v. 0.073 acres of land, more or less, situate in Pars. of Orleans & Jefferson, Louisiana*, 705 F.3d 540, 543 (5th Cir. 2013) ("Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain."); *United States v. Chang*, 633 F. App'x. 601, 602 (5th Cir. 2016) (affirming district court's decision granting judgment on the pleadings in a denaturalization petition). A party may present a Rule 12(c) motion after the close of pleadings, so long as it is "early enough not to delay trial." FED. R. CIV. P. 12(c).

When considering a Rule 12(c) motion, a court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 458 (S.D. Tex. 2012) (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)). "Under Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *PNC Bank, Nat'l Ass'n v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568, 574 (5th Cir. 2025) (cleaned up) (quoting FED. R. EVID. 201(b)(2)). A court may take judicial notice of other court proceedings, including criminal convictions, and draw "reasonable inferences" from them. *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 (5th Cir. 2010) (citing *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)); *see also Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988) (explaining that prior criminal convictions are "facts of the kind that generally can be clearly proved with relative ease even absent" the defendant admitting to them) (cleaned up).

## II. Factual and Procedural Background[1]

Gallegos was born in Mexico and was admitted to the United States in 1998 as a temporary visitor for pleasure, nonimmigrant classification B-2.

In December 2001, he married a United States citizen.  About four years later, the United States granted Gallegos's application and adjusted his immigration status to permanent resident with no conditions.

In October 2009, Gallegos applied to become a naturalized United States citizen.  Question 15 of the Application asked whether Gallegos had "ever committed a crime or offense for which you were not arrested?" (N-400 Form, Doc. 1–4, 9)  He responded, "No." (*Id.*)

In February 2010, the Government approved the application and Gallegos took his citizenship oath the following month.

More than six years later, in 2016, the State of Texas indicted Gallegos on two counts of aggravated sexual assault of a child, in violation of Texas Penal Code § 22.021(a)(1)(B)(iii)&(iv).  The indictment alleged that the sexual assault occurred in March 2007, or about two years before Gallegos applied for naturalization.  Gallegos pled guilty and received a sentence of six years community supervision.

The Government then filed this action, seeking to revoke Gallegos's naturalization under 8 U.S.C. § 1451(a).  The United States alleges that Gallegos's naturalization must be set aside on four separate grounds:

- He was statutorily ineligible for naturalization because within the five-year period before he filed his application, he committed a crime involving moral turpitude (Count I (relying on 8 U.S.C. § 1182(a)(2)(A)(i)(I)));

---

[1] The Court accepts the truth of the following factual statements based on the allegations that Gallegos admitted, the documents attached to the Complaint, and criminal proceedings of which the Court can take judicial notice. (*See* Response, Doc. 78 (recognized more accurately as an Answer to the Government's Complaint by the court that previously presided over this matter))

- He was statutorily ineligible for naturalization because within the five-year period before he filed his application, he committed unlawful acts that adversely reflected on his moral character (Count II (relying on 8 C.F.R. § 316.10(b)(3)(iii)));

- He made a materially false statement when he testified as part of his application that "he had never committed a crime or offense for which he had not been arrested" (Count III); and

- In connection with his application, he "willfully misrepresented and concealed" his prior criminal activity (Count IV).

The Court repeatedly stayed the lawsuit to enable Gallegos to collaterally attack his state-court conviction. In November 2022, a Court of Appeals of Texas affirmed the trial court's denial of Gallegos's challenge. *See Ex parte Gallegos*, No. 13-20-00320-CR, 2022 WL 17260517 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2022, pet. ref'd). And both the Texas Court of Criminal Appeals and the Supreme Court of the United States declined petitions for further review. *See Gallegos v. Texas*, 144 S. Ct. 702 (2024).

In August 2024, after Gallegos exhausted his avenues for collateral attack, the United States moved for judgment on the pleadings.[2] (Motion, Doc. 73)

### III. Analysis

Justice Hugo Black once described United States citizenship as a "priceless treasure[.]" *Johnson v. Eisentrager*, 339 U.S. 763, 791 (1950) (Black, J., dissenting). "To guard the integrity of this priceless treasure, the government must be accorded the authority to seek the denaturalization of those who, in procuring citizenship, misstated or concealed facts that, if disclosed, would have led the government to conduct an inquiry that might have resulted in denial

---

[2] At the hearing on January 13, 2026, the Court found the Motion for Judgment on the Pleadings unopposed. The Government seeks judgment only as to Counts I and II. (Motion, Doc. 73, 1, n.1)

of citizenship." *United States v. Fedorenko*, 597 F.2d 946, 952 (5th Cir. 1979), *aff'd*, 449 U.S. 490 (1981).

Federal law authorizes district courts to "revok[e] and set[ ] aside the order admitting [a] person to citizenship and [to] cancel[ ] the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation[.]" 8 U.S.C. § 1451(a). "If a person manages to become a citizen despite not meeting Congress's requirements, his citizenship is illegally procured." *United States v. Vasquez*, 1 F.4th 355, 359 (5th Cir. 2021) (cleaned up) (concluding that denaturalization was mandated for a naturalized citizen who would have been inadmissible based on his participation in extrajudicial killings in his native country); *Chang*, 633 F. App'x. at 603 (finding that a naturalized citizen illegally procured his citizenship when he did not disclose that he smuggled female aliens into the United States to engage in forced labor).

"Because rights once conferred should not be lightly revoked, the government must meet an exacting standard to denaturalize a citizen, proving its charges by clear, unequivocal, and convincing evidence." *Vasquez*, 1 F.4th at 359 (cleaned up). This standard requires a level of proof "substantially identical" to the one governing criminal proceedings. *Id.* (citing *Klapprott v. United States*, 335 U.S. 601, 612 (1949)).

An applicant for naturalization must establish that he possesses "good moral character" and has done so for at least the five years before his application. *See* 8 U.S.C. § 1427(a); *see also* § 1427(e) (noting that the Attorney General must consider the applicant's conduct during the five years before the application, but is not limited solely to that time span). A person lacks good moral character if he is a person "described in" 8 U.S.C. § 1182(a)(2). 8 U.S.C. § 1101(f)(3). That statute references, as relevant here, an alien who is "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude[.]" 8 U.S.C. § 1182(a)(2)(A)(i)(I).

"Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Munoz-Rivera v. Wilkinson*, 986 F.3d 587, 590–91 (5th Cir. 2021). The concept includes acts that are "per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *Id.* A court "focuses on the inherent nature of the crime, as defined in the statute, rather than the circumstances surrounding the particular transgression." *Id.* at 591 (cleaned up) (finding that the unauthorized use of a Social Security number was a crime involving moral turpitude); *see also Villegas-Sarabia v. Sessions*, 874 F.3d 871, 881 (5th Cir. 2017) (concluding that misprison of a felony was a crime involving moral turpitude); *but see Orosco v. Holder*, 396 F. App'x. 50, 54 (5th Cir. 2010) (unpubl.) ("The failure to report an accident involving a parked car to the local police department after leaving the name and address to notify the driver of the parked car of the incident is not conduct that rises to the level of moral turpitude."). In judging the inherent nature of the crime, a court examines "the minimum criminal conduct necessary to sustain a conviction under the statute." *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 288 (5th Cir. 2007).

The Government can move for denaturalization when, after an individual's naturalization, evidence arises that the person committed unlawful acts or crimes involving moral turpitude less than five years before his application for naturalization. In such circumstances, if the evidence demonstrates that within the relevant five-year period, the individual committed such unlawful acts, a court must order the denaturalization of the individual. *See, e.g., Vasquez*, 1 F.4th at 361–62 (reversing the denial of the Government's denaturalization petition because under the undisputed facts that the district court found, the defendant illegally procured his citizenship).

Of relevance to Count II, 8 U.S.C. § 1101(f) lists various criminal offenses and activities that demonstrate a lack of good moral character. But the statute also provides that the "fact that

any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). A finding of lack of good moral character is required if the applicant committed "unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview" of other statutory definitions. 8 C.F.R. § 316.10(b)(3)(iii). The only exception to this rule is if the applicant can establish that "extenuating circumstances" justified or mitigated the unlawful acts. *Id.* at § 316.10(b)(3); *see also United States v. Okoro*, No. 20-20631, 2021 WL 1567535 (5th Cir. Apr. 21, 2021) (per curiam) (unpubl.) (affirming the denaturalization of an individual in part because he presented no evidence of any extenuating circumstances regarding his criminal conduct). The Fifth Circuit has not defined extenuating circumstances under this statute, but the Seventh and Eleventh Circuits have held that it requires a showing that lessens the applicant's culpability for the act, as opposed to the hardship that would be caused by denaturalization. *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (finding that the applicant failed to show any extenuating circumstances motivating his decision to join a drug conspiracy); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) (same).

Turning to the present matter, it is undisputed in April 2017, Gallegos pled guilty to aggravated sexual assault of a child, in violation of Texas Penal Code § 22.021(a)(1)(B). Gallegos's criminal conduct took place in 2007, less than five years before he applied for naturalization.

The minimum criminal conduct necessary to violate Section 22.021(a)(1)(B) requires the offender to either willfully and knowingly have contact with a child's sexual organ or willfully and knowingly have the child make contact with the offender's sexual organ. The statute defines a child as a person under 17 years of age. TEX. PENAL CODE §§ 22.021(b)(1), 22.011(c)(1). The Court concludes that such conduct represents a crime involving moral turpitude. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious

crime and an act repugnant to the moral instincts of a decent people."). At the recent status conference, Gallegos's counsel conceded as much.

Additionally, the Court finds that Gallegos's criminal conduct adversely reflects upon his moral character, in violation of 8 C.F.R. § 316.10(b)(3)(iii). *Cf. United States v. Dave*, 652 F. App'x. 468, 470 (7th Cir. 2016) (unpubl.) ("We thus apply Section 316.10(b)(3)(iii) in a direct manner: by pleading guilty to aggravated criminal sexual abuse of a minor, Dave admitted a crime which reflected adversely on his moral character.").

As a result, the undisputed facts demonstrate clearly, unequivocally, and convincingly that Gallegos was ineligible for naturalization when he obtained approval of his application. He thus illegally procured his naturalization, and the Government is entitled to the relief it requests under 8 U.S.C. § 1451(a) as to Count I and Count II.

## IV. Conclusion

For the reasons stated above, it is:

**ORDERED** that the Government's Motion for Judgment on the Pleadings (Doc. 73) is **GRANTED**.

The Court will separately issue a Final Judgment.

Signed on January 22, 2026.

_____
Fernando Rodriguez, Jr.
United States District Judge